# EXHIBIT "1"

## PROMISSORY NOTE

U.S. $400,000.00                                                                                     Hallandale Beach, Florida
                                                                                                     April 5, 2005

1. Parties.

   1.1  I. KUSHNIR HOTELS, INC., a Florida corporation and Israel Kushnir, Individually (collectively the "Borrower"), having an address of 3001 North Ocean Drive, Hollywood, FL 33019.

   1.2  MICKY BISS, TRUSTEE OF THE ELAINE BISS REVOCABLE TRUST ("Lender"), whose address is 1744 South Miami Avenue, Miami, Florida 33129.

2. Borrower's Promise to Pay. For value received, Borrower promises to pay to the order of Lender, its successors or assigns, without any off-set or deduction whatsoever, FOUR HUNDRED THOUSAND and No/100 ($400,000.00) U.S. Dollars (the "Principal"), plus interest (the "Interest") from the date hereof at the rate of eight (8%) percent per annum for the first 12 months of the term of this loan and ten (10%) percent per annum for the final 12 months of the term of this loan. In the event of default hereunder, from the date of default, Interest shall accrue at the highest rate permitted by applicable law.

3. Payments. Installments of Interest only totaling Two Thousand Six Hundred Sixty-Six and 66/100 Dollars ($2,666.66) shall be due and payable monthly commencing on May 5, 2005 and on the fifth day of each month thereafter until May 5, 2006 at which time the monthly installment of Interest only shall become Three Thousand Three Hundred Thirty Three and 33/100 Dollars ($3,333.33). Such payments shall continue until April 5, 2007, at which time the entire unpaid Principal balance and any unpaid Interest will be due and payable in full.

4. Application of Payments. So long as no default has occurred in this Note, all payments hereunder shall first be applied to Interest, then to Principal. Upon default in this Note, all payments hereunder shall first be applied to costs pursuant to Section 8.3, then to Interest and the remainder to Principal.

5. Prepayment. This Note may be prepaid, in full, at any time, provided, however, that if, at the time of prepayment, the amount of interest paid on this Promissory Note to date is less than Thirty-Two Thousand Dollars ($32,000.00), then in addition to Principal and accrued and unpaid Interest, the undersigned shall pay to Lender, as a prepayment penalty, the difference between Thirty-Two Thousand Dollars ($32,000.00) and the amount of Interest paid and accrued through the date of prepayment. Such prepayment penalty shall apply in any event of prepayment including, without limitation, prepayment as a result of Lender's acceleration (as per Paragraph 8.2 below) and prepayment as a result of a judgment.

6. Other Instruments. The term "Loan Documents" as used herein shall mean all and any of the documents now or hereafter executed by Borrower, by others, or by Borrower and others, in favor of Lender, which wholly or partly secure or are executed in connection with this Note, including, but not limited to, the Real Estate Mortgage, Assignment of Rents and Security Agreement of even date herewith encumbering certain real and personal property located in Broward County, Florida. Reference is made to the provisions of the Loan Documents for a description of the further rights of Lender.

7. Place of Payment. All payments hereunder shall be made at Lender's address set forth above or such other place as Lender may from time to time designate in writing.

8. Default.

   8.1  If any sum due Lender hereunder or under any of the Loan Documents is not paid within seven (7) days after notice from Lender that such sum was due and not paid or if any sum due under that certain loan of even date herewith made to RM Works Incorporated, I. Kushnir Hotels, Inc., Mark Perlman and Israel Kushner, jointly and severally, in the original principal amount of $2,200,000.00 (the "Land Loan")or any other loan(s) made from Lender to Borrower (collectively "Other Loans") is not paid within 10 days of when due, or if any other default occurs under the Land Loan or any Other Loans or any of the Loan Documents or if any obligation of Borrower under any of the Loan Documents or of borrowers under the Land Loan or Other Loans is not fully performed, subject to any applicable grace period, then this Note shall be in default.

   8.2  Upon default in this Note: (a) Lender, at its option, may declare the entire unpaid Principal balance of this Note, together with accrued Interest, to be immediately due and payable without notice or demand, and (b) Lender shall be entitled to the benefit of any remedies available to it at law or in equity.

   8.3  In addition to payments of Interest and Principal, if there is a default in this Note, Lender shall be entitled to recover from Borrower all of Lender's costs of collection, including Lender's attorneys' fees, paralegals' fees and legal assistants' fees (whether for services incurred in collection, litigation, bankruptcy proceedings, appeals or otherwise) and all other costs incurred in connection therewith.

9. Late Charges. A late charge of five percent (5%) of any payment required hereunder shall be imposed on each and every payment, including the final payment due hereunder, not received by Lender within five days after it is due. The late charge is not a penalty, but liquidated damages to defray administrative and related

expenses due to such late payment. The late charge shall be immediately due and payable and shall be paid by Borrower to Lender without notice or demand. Lender's acceptance of a late charge shall not constitute a waiver of any default then existing or thereafter arising in this Note.

10. Maximum Interest. It is the intent of the parties hereto that in no event shall the amount of Interest or payments in the nature of Interest payable hereunder exceed the maximum rate of interest allowed by applicable law, as amended from time to time, and in the event any such payment is paid by Borrower or received by Lender, then such excess sum shall be credited as a payment of Principal, unless Borrower notifies Lender, in writing, that Borrower elects to have such excess sum returned to it forthwith.

11. Unconditional Payment. Borrower is and shall be obligated to pay Principal, Interest and any and all other amounts which become payable hereunder or under the other Loan Documents absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or set-off.

12. Waivers. Borrower and any endorsers, sureties, guarantors and all others who are, or may become liable for the payment hereof, severally:

12.1 waive presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note;

12.2 consent to all extensions of time, renewals, postponements of time of payment of this Note or other modifications hereof from time to time prior to or after the Maturity Date, whether by acceleration or in due course, without notice, consent or consideration to any of the foregoing;

12.3 agree to any substitution, exchange, addition, or release of any of the security for the indebtedness evidenced by this Note or the addition or release of any party or person primarily or secondarily liable hereon;

12.4 agree that Lender shall not be required first to institute any suit, or to exhaust its remedies against the undersigned or any other person or party to become liable hereunder or against the security in order to enforce the payment of this Note; and

12.5 agree that, notwithstanding the occurrence of any of the foregoing (except by the express written release by Lender of any such person), the undersigned shall be and remain, jointly and severally directly and primarily liable for all sums due under this Note.

13. Submission to Jurisdiction. Borrower, and any endorsers, sureties, guarantors and all others who are, or who may become, liable for the payment hereof severally, irrevocably and unconditionally:

13.1 agree that any suit, action, or other legal proceeding arising out of or relating to this Note may be brought, at the option of Lender, in a court of record of the State of Florida in Broward County, in the United States District Court for the Southern District of Florida, or in any other court of competent jurisdiction;

13.2 consent to the jurisdiction of each such court in any such suit, action or proceeding; and

13.3 waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any of such courts.

14. Miscellaneous Provisions.

14.1 The term "Lender" as used herein shall mean any holder of this Note.

14.2 Time is of the essence in this Note.

14.3 The captions of sections of this Note are for convenient reference only and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Note.

14.4 This Note shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

14.5 If any provision of this Note is found by a court of competent jurisdiction to be unenforceable or null and void, such provision shall be deemed stricken and severed from this Note, and the remaining provisions shall continue in full force and effect.

14.6 This Note and the other Loan Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof and all prior agreements relative hereto and thereto which are not contained herein or therein are terminated. This Note may not be amended, extended, renewed or modified nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by an authorized

agent of Lender. Any waiver of any provision hereof shall be effective only in the specific instance and for the specific purpose for which given.

15. <u>Waiver of Trial by Jury.</u> BORROWER AND LENDER (BY ACCEPTANCE OF THIS INSTRUMENT) HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS NOTE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER ENTERING INTO THE SUBJECT LOAN TRANSACTION.

This document, being executed on April 7, 2005, is effective as of April 5, 2005.

BORROWER:

I. KUSHNIR HOTELS, INC., a Florida corporation

By: _____
Israel Kushnir, President

_____
Israel Kushnir, Individually

STATE OF FLORIDA  )
                  ) SS:
COUNTY OF BROWARD )

The foregoing instrument was acknowledged before me this 7th day of April, 2005 by Israel Kushnir, individually and as President of I. Kushnir Hotels, Inc. He is personally known to me or who has produced FL Drivers Lic as identification.

SANDRA G. ORTEGA
MY COMMISSION # DD 155847
EXPIRES: October 8, 2006
1-800-3-NOTARY  FL Notary Service & Bonding, Inc.

_____
Notary Public, State of Florida
Print Name: Sandra Ortega
My Commission Expires:

# EXHIBIT "2"

INSTR # 104900536
OR BK 39425 Pages 285 - 294
RECORDED 04/13/05 07:35:05
BROWARD COUNTY COMMISSION
DOC STMP-M: $1400.00
INT TAX: M $800.00
DEPUTY CLERK 3055
#3, 10 Pages

Return to:
Mark Perlman, Esq.
1820 E. Hallandale Beach Blvd.
Hallandale Beach, FL 33009

## REAL ESTATE MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

Date:       April 5, 2005

Borrower:   I Kushnir Hotels, Inc., a Florida corporation and Israel Kushnir, individually, both having an address of 3001 North Ocean Drive, Hollywood, FL 33019.

Lender:     Micky Biss, as Trustee of the Elaine Biss Revocable Trust having an address of 1744 South Miami Avenue, Miami, Florida 33129

Amount of initial indebtedness secured by this Mortgage:   $400,000.00

Maximum principal indebtedness, including future advances that may be secured by this Mortgage: $800,000.00

This is a Real Estate Mortgage, Assignment of Rents and Security Agreement (the "Mortgage") to secure Borrower's performance and observance of all the terms, covenants, and conditions contained in a Promissory Note dated today in an amount equal to the initial indebtedness set forth above (the "Note") and in this Mortgage. For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower mortgages to Lender, its successors and assigns, all the following described property and any additional property acquired by Borrower in the future and subjected to the lien of this Mortgage as set forth below (collectively, the "Mortgaged Property"):

A.     Land. That certain parcel of real property located in Broward County, Florida and more particularly described as follows:

LOTS 10 AND 11, LESS THE WESTERLY 12.13 FEET THEREOF AND ALL OF LOT 9, BLOCK 6, HOLLYWOOD BEACH SECOND ADDITION, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 4, PAGE 6 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

Address:   3001 North Ocean Drive, Hollywood, FL

Folio Number:   1212-02-0880

B.     Improvements. All buildings, structures, and other improvements of any nature situated in whole or in part upon the Land now or at any time during the term of this Mortgage regardless of whether physically affixed now or hereafter severed or capable of severance from the Land (the "Improvements");

C.     Appurtenances. All easements, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, tenements, hereditaments and appurtenances, in any way belonging, relating, or pertaining to the Land now or at any time during the term of this Mortgage, together with all reversions, remainders, rents, issues and profits;

D.     Tangible Property. All Borrower's right, title and interest in and to all fixtures, machinery, equipment, tools, construction materials, and other tangible personal property attached to, situated on or about or in any way related to any present or future business operation or use of the Land or the Improvements now or at any time during the term of this Mortgage (the "Tangible Property");

E.     Rents. All rents, issues, incomes, security deposits and profits arising from the Land, the Improvements or the Tangible Property, whether existing now or at any time during the term of this Mortgage (the "Rents"); provided, however, that if Borrower is not in default under the Note or this Mortgage, Borrower may collect, and otherwise enjoy the benefit of all Rents;

F.     Contract Rights. All Borrower's right, title and interest in all contracts, franchise agreements, licenses, other agreements, equipment leases, and all warranties and guaranties related to the improvement, use, management, operation, sale, or other disposition (voluntary or involuntary) of the Land, the Improvements, the Tangible Property, or the Rents, including, without limitation, all deposits, prepaid items, and payments paid, due or to become due under any of the contracts as well as architectural plans and specifications and any other building plans, variances received or granted for the Land, city board or other city approval(s), building permits and development rights, affecting the Land and the Improvements and any other government approvals received relative to the Land (the "Contract Rights"); provided, however, that if Borrower is not in default under the Note or this Mortgage, Borrower may enjoy the benefit of all Contract Rights. Lender will not be bound to perform on Borrower's behalf under any contract subject to this section or otherwise. In the event of a default in the Mortgage by Borrower, Borrower shall immediately deliver all Contract Rights to Lender;

G.     Proceeds. All proceeds of the conversion (voluntary or involuntary) of any of the Mortgaged Property into cash or other liquidated claims, and all proceeds that are payable to Borrower for injury or loss to, or the taking,

1

conversion, requisitioning or destruction of, any of the Mortgaged Property, including all insurance and condemnation proceeds.

TO HAVE AND TO HOLD the Mortgaged Property subject, however, to the terms and conditions of this Mortgage.

PROVIDED, HOWEVER, that if Borrower performs all the terms, covenants, and conditions of the Note and this Mortgage than this Mortgage shall be void.

AND BORROWER represents to, warrants to, covenants with and agrees with Lender that:

## ARTICLE ONE
## COVENANTS AND WARRANTIES OF BORROWER

1.1     **Performance of Note and Mortgage.** Borrower will perform, observe and comply with all the provisions of the Note and this Mortgage, and will promptly pay to Lender all principal amounts together with all accrued interest and all other sums required to be paid by Borrower under the Note and this Mortgage, without deduction or credit for taxes or other similar charges paid by Borrower in connection with the Note or this Mortgage.

1.2     **Warranty of Title.** Borrower is well seized of an indefeasible estate in fee simple in the Land, has good and absolute title to all Tangible Property, Rents, Contract Rights and Intangible Property, and has full right, power and lawful authority to mortgage the Mortgaged Property to Lender. The Mortgaged Property is free and clear of all liens, charges and encumbrances, other than a certain Real Estate Mortgage, Assignment of Rents and Security Agreement and UCC-1 Financing Statement of even date herewith all in favor of USA Express, Inc., a Florida corporation (collectively the "Subordinate Mortgage"). The Subordinate Mortgage is subordinate to the Mortgage. Borrower warrants and shall forever defend the title of the Mortgaged Property, as set forth above, against all claims. Until the Note is paid in full, Borrower shall maintain the title to the Mortgaged Property (including all additions or replacements) free and clear of all liens and encumbrances other than this Mortgage and the Subordinate Mortgage.

1.3     **Subordinate Mortgage.** Borrower shall pay all sums when and as due under the Subordinate Mortgage, abide by each and every of the stipulations, agreements, covenants and conditions contained in the Subordinate Mortgage, not accept any further advances under Subordinate Mortgage and not modify Subordinate Mortgage. If Borrower fails to make any payment required under Subordinate Mortgage as and when due or fails to perform any of the stipulations, agreements, conditions and covenants of Subordinate Mortgage, Lender may, on behalf of Borrower (without the obligation to do so and without releasing Borrower from any obligation hereunder) take any action Lender deems reasonably necessary to prevent or cure any such default including, without limitation, the payment of any sums due under Subordinate Mortgage.

1.4     **Taxes, Liens and Utility Charges.**

(a)     Borrower shall pay prior to December 31st of each year all ad valorem taxes and assessments and other similar charges assessed against the Mortgaged Property and shall furnish proof of such timely payment to Lender on or before January 15th of each year;

(b)     Borrower will promptly provide Lender with receipts evidencing the payment of any other charge which, if unpaid, would become a lien upon the Mortgaged Property;

(c)     Borrower shall promptly pay when due all hookup and periodic use charges for utilities (public or private);

(d)     Borrower will not permit any statutory or other liens to be created or remain outstanding against any of the Mortgaged Property.

1.5     **Insurance.** Until the indebtedness secured by this Mortgage is paid in full, Borrower will obtain and maintain for Lender's benefit, all insurance policies insuring the Mortgaged Property and Borrower against fire, windstorm, extended coverage and such other insurable hazards, casualties, liabilities and contingencies as Lender may require. The form of all required policies, the amounts of coverage, and the companies issuing the policies shall be reasonably acceptable to Lender.

All insurance policies obtained by Borrower concerning the Mortgaged Property shall contain a Florida standard mortgagee clause making losses payable to Borrower and Lender jointly. Borrower shall not obtain insurance policies (other than those required by Lender) that are concurrent in form with the required policies or that contribute to the coverage afforded by the required policies without Lender's prior written consent. The insurance policies obtained by Borrower shall not be terminable or modified without 30 days' prior written notice to Lender, and shall be evidenced by original policies or certified copies of policies deposited with Lender, as Lender may elect.

At least 30 days before each insurance policy (required or optional) expires, Borrower shall deliver to Lender evidence satisfactory to Lender that the policy has been renewed and a receipt evidencing that the premium for the renewed policy has been paid. Borrower shall deliver to Lender the originals of all insurance policies concerning the Mortgaged Property or, at Lender's option, Borrower may deliver to Lender, original evidence of each insurance policy.

2

As further security for the payment of the indebtedness secured by this Mortgage, Borrower assigns to Lender all Borrower's right to all unearned premiums under the policies.

Borrower directs each insurer to pay all insurance proceeds to Borrower and Lender jointly. Borrower and Lender shall hold all proceeds of insurance Borrower receives in trust for the benefit of Lender in a segregated joint account not commingled with Borrower's other funds. So long as Borrower is not in default of this Mortgage or of the Hotel Loan (as defined in the Note) or of any Other Loans (as defined in the Note) and/or no event exists that with the giving of notice or passage of time will become a default, Borrower shall have the option to either: a) apply the insurance proceeds to the reduction of the outstanding principal balance; or 2) apply the insurance proceeds to the restoration of the Improvements.

If Borrower chooses to restore the Improvements, Lender shall make available to Borrower all or any portion of the insurance proceeds for application to the restoration of the Improvements upon such terms and conditions as Lender may reasonably impose to assure the quality of the restoration and the proper application of the insurance proceeds to the costs of restoration. Borrower's exercising its option to apply the insurance proceeds to reduce the indebtedness secured by this Mortgage shall not obligate Lender to release any portion of the Mortgaged Property from the lien and operation of this Mortgage. Borrower shall provide funds necessary to make up any shortfall in the insurance proceeds so as to fully restore the Improvements. Any excess of insurance proceeds after the complete restoration of the Improvements shall be delivered to Borrower. Any shortfall in the insurance proceeds In any event, Lender is not responsible to Borrower for any failure to collect insurance proceeds.

1.6   Condemnation. If all or any part of the Mortgaged Property is damaged or taken through condemnation, either temporarily or permanently, to further secure the payment of the indebtedness secured by this Mortgage, Borrower assigns to Lender all compensation, awards and other payments made to Borrower in connection with the taking. Borrower authorizes Lender, at its option but only in good faith, to commence, prosecute, and defend, in Lender's name or in Borrower's name, any proceeding relating to the taking and to settle or compromise any claim of Borrower in connection with the taking. Borrower assigns to Lender all Borrower's right to all compensation, awards, damages, claim, rights of action and proceeds of the taking. After deducting from the proceeds of condemnation received by Lender all Lender's expenses incurred in connection with the taking (including Lender's reasonable attorneys' fees), Lender shall apply the proceeds to the reduction of the indebtedness secured by this Mortgage. After payment of all sums due hereunder and under the Note, Lender shall pay any excess proceeds to Borrower. Borrower shall execute all additional instruments evidencing Borrower's assignment of all compensation, award, damages, claims, right of action and proceeds as Lender may require. Lender is not obligated to release any portion of the Mortgaged Property from the lien of this Mortgage because Lender chooses to apply the condemnation proceeds to reduce the indebtedness secured by this Mortgage.

1.7   Care of the Mortgaged Property. Borrower shall:

(a)   preserve and maintain the Mortgaged Property in good condition and repair, and Borrower shall not commit or suffer any waste of the Mortgaged Property;

(b)   permit Lender to inspect the Mortgaged Property at any time during normal business hours until the indebtedness secured by this Mortgage is paid in full;

(c)   promptly comply with all present and future restrictive covenants, conditions and governmental laws, ordinances, rules and regulations affecting the Mortgaged Property.

1.8   Further Assurances, After Acquired Property. Until the indebtedness secured by this Mortgage is paid in full, upon Lender's request, Borrower shall execute and deliver to Lender or cause to be executed and delivered to Lender, and where appropriate, cause to be recorded or filed in all places requested by Lender, all instruments of further assurance, including, without limitation, any further security agreements and financing statements as may, in Lender's opinion, be reasonably necessary or desirable to effectuate, perfect or preserve Borrower's obligations under the Note and this Mortgage.

1.9   Expenses. Borrower shall reimburse Lender for all costs and expenses, including reasonable attorneys' fees, incurred by Lender in connection with renewing, modifying, supplementing, enforcing or collecting the Note, this Mortgage, or enforcing or protecting Lender's interest in the Mortgaged Property, including, without limitation, the foreclosure of this Mortgage, prosecuting or defending any insurance claim or condemnation action to protect the security of this Mortgage. Lender's costs and expenses shall be included in the indebtedness secured by the lien of this Mortgage, and Borrower shall pay any amounts due Lender under this section on demand, together with interest at the default rate provided in the Note.

1.10   Lender's Performance of Defaults. If Borrower defaults in the performance of any term, covenant or condition of this Mortgage, Lender may perform the term, covenant or condition on Borrower's behalf, and all payments made or costs incurred by Lender in connection with performing on Borrower's behalf shall be a part of the indebtedness secured by this Mortgage and shall earn interest at the default rate provided in the Note. Lender may enter the Mortgaged Property at any time to cure Borrower's defaults on Borrower's behalf, without incurring liability of any nature to Borrower or any person authorized by Borrower to be in possession of the Mortgaged Property.

3

1.11     Estoppel Affidavits. Within 10 days after Lender's written request, Borrower shall furnish Lender a written statement setting forth the unpaid principal and interest under the Note and stating whether Borrower has any offsets or defenses against the enforcement of the Note.

1.12     Defense by Borrower. At Lender's option, Borrower shall, at Borrower's expense, prosecute or defend any action or proceeding which might, in Lender's judgment, affect the value of the Mortgaged Property (except for an action against any governmental authority in the nature of a "taking" or a partial "taking"), the priority of this Mortgage or the rights and powers of Lender under this Mortgage.

1.13     Time. Time is of the essence in connection with all Borrower's obligations in the Note and this Mortgage.

1.14     Solvency of Borrower. Borrower is now in a solvent condition and no bankruptcy or insolvency proceedings are presently pending or threatened against or contemplated by Borrower.

1.15     Environmental Matters. Borrower represents, warrants and covenants to Lender that the Mortgaged Property will not be used for manufacturing or for waste disposal or for generation, storage or use of Hazardous Material (defined below) during Borrower's ownership, nor, to Borrower's knowledge, has it been so used at any prior time; that the present and intended conditions and uses at the Mortgaged Property comply with all applicable laws and other legal requirements (each an "Environmental Requirement") relating to health or the environment (including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. 9601, et seq.); and that to the best of Borrower's knowledge (i) the Mortgaged Property is free of any substance ("Hazardous Material") which could pose a hazard to the environment or to the health or safety of persons on or about the Mortgaged Property, or which is regulated, or classified as hazardous or toxic, in or pursuant to any Environmental Requirement; and (ii) there is no claim or inquiry threatened, instituted or completed concerning the presence or discharge of any Hazardous Material on, in, under or about the Mortgaged Property, and Borrower will promptly advise Lender in writing as soon as Borrower first obtains knowledge of any such claim or inquiry heretofore or hereafter occurring. Borrower will not place or allow to remain any Hazardous Material on, in, under or about the Mortgaged Property or commit, permit or allow to continue any violation of any Environmental Requirement or commit, permit or allow to continue any violation of any Environmental Requirement at the Mortgaged Property. Borrower agrees to indemnify and hold harmless Lender; all persons and entities controlled by, controlling or under common control with Lender; the respective directors, officers, partners, employees and agents of Lender; and the heirs, personal representatives, successors and assigns of each of the foregoing, from and against any and all claims, damages, losses, costs, fines, penalties, liabilities (including, but not limited to, strict liability) and expenses (including, but not limited to, fees, costs, and expenses of attorneys, consultants and contractors), regardless of when asserted, imposed or incurred, arising directly or indirectly, in whole or in part, from any Hazardous Material which is, or is alleged to be, present on, in, under or about the Mortgaged Property at any time prior to full and final release or foreclosure (or transfer in lieu of foreclosure) of the Mortgage, regardless of whether the presence or alleged presence of such Hazardous Material was caused by Borrower, a tenant or subtenant, a prior owner or its tenant or subtenant, or any third party. The foregoing provisions regarding environmental matters shall be cumulative of all other obligations of Borrower and all other rights and remedies of Lender under the Loan Documents, applicable law or otherwise, and the foregoing indemnities shall survive all events, including, but not limited to, payment of the indebtedness secured hereby, any foreclosure of the Mortgaged Property (or transfer in lieu thereof), any debtor relief proceeding, and the release or other termination of this Mortgage.

## ARTICLE TWO
## ASSIGNMENT OF RENTS

2.1     Assignment. Borrower does hereby absolutely and unconditionally assign and transfer to Lender all of Borrower's estate, right, title and interest in and to the Rents, to have and to hold the Rents unto Lender, its successors and assigns forever. From time to time, upon request of Lender, Borrower shall give further evidence of this assignment to Lender by executing and delivering to Lender specific assignments of the Leases and Rents, in form and content approved by Lender. All such specific assignments shall be of the same dignity and priority as this Mortgage. From time to time, upon request of Lender, Borrower shall also execute and deliver to Lender any notification to tenants or other document reasonably required by Lender.

2.2     Payment of Rents to Borrower, as Trustee, Until Default. So long as no Event of Default has occurred, Borrower may, as trustee for the use and benefit of Lender, collect, receive and accept the Rents as they become due and payable (but in no event for more than three months in advance); provided, however, that if the Rents exceed the payments due under the Note, Borrower may use such excess, first, for the operation and benefit of the Mortgaged Property and, second, for the general benefit of Borrower. Upon the occurrence of an Event of Default, Lender may, at its option, remove Borrower as trustee for the collection of the Rents and appoint any other person including, but not limited to, itself as a substitute trustee to collect, receive, accept and use all such Rents in payment of the obligations secured by this Mortgage, in such order as Lender shall elect in its sole and absolute discretion, whether or not Lender takes possession of the Mortgaged Property. Borrower hereby directs each of the respective tenants under any leases hereafter affecting the Mortgaged Property (the "Leases"), and any rental agent, to pay to Lender all such Rents, as may now be due or shall hereafter become due, upon demand for payment thereof by Lender without any obligation on the part of any such tenant or rental agent to determine whether or not an Event of Default has in fact occurred. Upon an Event of Default, the permission hereby given to Borrower to collect, receive and accept such Rents as trustee shall terminate and such permission shall not be reinstated upon a cure of the Event of Default

4

without Lender's specific written consent. Further, upon the event of a Default, Borrower shall immediately turn over to Lender all Rents in the actual or constructive possession of Borrower, its affiliates, contractors, or its agents, together with an accounting thereof. Exercise of Lender's rights under this section, and the application of any such Rents to the obligations secured by this Mortgage, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto, but shall be cumulative and in addition to all other rights and remedies of Lender.

2.3   Performance Under Leases. Borrower covenants that it shall, at its sole cost and expense, (a) duly and punctually perform and discharge, or cause to be performed and discharged, all of the obligations and undertakings of Borrower or its agents under the Leases, (b) use its best efforts to enforce or secure, or cause to be enforced or secured, the performance of each and every obligation and undertaking of the respective tenants under the Leases, (c) promptly notify Lender if Borrower receives any notice from a tenant claiming that Borrower is in default under a Lease, and (d) appear in and defend any action or proceeding arising under or in any manner connected with the Leases.

2.4   Provisions of Leases and Approval of Tenants. All Leases shall be inferior and subordinate to the lien of this Mortgage and the terms of each Lease shall so expressly provide. Borrower covenants that all Leases hereafter entered into by Borrower shall be in form and substance approved by Lender.

2.5   Notification of Lender's Rights. Lender shall have the right, but not the obligation, at any time and from time to time, to notify any tenant under any Lease of the rights of Lender as provided in this Article Two and Borrower, upon demand from Lender, shall confirm to such tenant the existence of such rights.

2.6   Other Assignments. Borrower shall not further assign or transfer the Leases or Rents except in favor of Lender as provided in this Article Two, and shall not create or permit to be created or to remain, any mortgage, pledge, lien, encumbrance, claim, or charge on the Leases or Rents. Any transaction prohibited under this section shall be null and void.

2.7   Section 697.07 of the Florida Statutes. The assignments of Leases and Rents contained in this Mortgage are intended to provide Lender with all the rights and remedies of mortgagees pursuant to Section 697.07 of the Florida Statutes (hereafter "Section 697.07"), as same may be amended from time to time. However, in no event shall this reference diminish, alter, impair, or affect any other rights and remedies of Lender, including but not limited to, the appointment of a receiver as provided herein, nor shall any provision in this Article Two, diminish, alter, impair or affect any rights or powers of the receiver in law or equity or as set forth in Section 3.4 herein. In addition, this assignment shall be fully operative without regard to the value of the Mortgaged Property or without regard to the adequacy of the Mortgaged Property to serve as security for the obligations owed by Borrower to Lender, and shall be in addition to any rights arising under Section 697.07. Further, except for the notices required hereunder, if any, Borrower waives any notice of default or demand for turnover of Rents by Lender, together with any rights under Section 697.07 to apply to a court to deposit the Rents into the registry of the court or such other depository as the court may designate.

## ARTICLE THREE
## DEFAULTS AND REMEDIES

3.1   Event of Default. Borrower is in default if any of the following events occur:

(a)   Borrower fails to pay any installments of interest or principal required by the Note, within seven (7) days after notice from Lender that such sum was due and not paid;

(b)   Borrower fails to observe any other term, covenant or condition required of Borrower under the Note or this Mortgage within 10 days after notice from Lender or, if same is not reasonably capable of being observed within said 10 day period, if Borrower fails to commence to observe such other term, covenant or condition within said 10 day period and, thereafter, fails to diligently pursue observing same;

(c)   Borrower files a voluntary petition in bankruptcy for adjudication as a bankrupt or insolvent or Borrower files a petition or answer seeking or acquiescing to any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law or regulation relating to bankruptcy, insolvency or other relief for debtors;

(d)   Borrower seeks, consents or acquiesces to, or is unable to prevent the appointment of a trustee, receiver or liquidator for the Mortgaged Property, or Borrower makes a general assignment for the benefit of creditors or admits in writing that Borrower is unable to pay debts as they become due;

(e)   Borrower fails to discharge within 60 days any petition filed against Borrower seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law or regulation relating to bankruptcy, insolvency or other relief for debtors; or

(f)   Borrower fails to observe all the terms, covenants and conditions of any other obligation of Borrower to Lender, wherever and however incurred.

*[signatures]* 5