Prepared by and after
recording Return To:
Doris Freudman, Esq.
1744 South Miami Avenue
Miami, Florida 33129

CFN # 109774802
OR BK 47607 Pages 49 - 50
RECORDED 12/22/10 03:42:42 PM
BROWARD COUNTY COMMISSION,
DEPUTY CLERK 1012
#1, 2 Pages

## ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

**MICKY BISS, AS TRUSTEE OF ELAINE BISS IRREVOCABLE TRUST,** having an address of 1744 South Miami Avenue, Miami, Florida 33129 ("Assignor"), for and in consideration of the payment of Ten and No/100 Dollars ($10.00), and other good and valuable consideration to it in hand paid by **RSAS, LLC, a Florida limited liability company,** ("Assignee") having an address of 1744 South Miami Avenue, Miami, Florida 33129, the receipt and sufficiency of which are hereby acknowledged, does hereby grant, bargain, sell, transfer, convey and assign unto Assignee, its successors and assigns, without recourse, representation or warranty of any nature or kind whatsoever, all of the right, title and interest of Assignor in and to that certain Real Estate Mortgage, Assignment of Rents and Security Agreement given by **I. KUSHNIR HOTELS, INC.,** a Florida corporation, in favor of The Elaine Biss Revocable Trust dated as of April 5, 2005, recorded in Official Records Book 39425 at Page 285, of the Public Records of Broward County, Florida and assigned to Assignor by Assignment of Mortgage and Other Loan Documents, recorded in Official Records Book 46753 at Page 1275, of the Public Records of Broward County, Florida (the "Mortgage"), as modified, amended, extended and supplemented from time to time, upon the following described place or parcel of land, situate and being in said County and State, to wit:

LOTS 10 AND 11, LESS THE WESTERLY 12.13 FEET THEREOF AND ALL OF LOT 9, BLOCK 6, HOLLYWOOD BEACH SECOND ADDITION, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 4, PAGE 6 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

Address: 3001 North Ocean Drive, Hollywood, Florida

Tax Folio Number: 1212-02-0880

Together with: (i) all notes and obligations described in said Mortgage, all other loan documents and agreements evidencing the indebtedness secured thereby, and any monies now due or to become due thereon from and after the date hereof, together with all accrued and unpaid interest thereon, and together with all rights of Assignor arising thereunder; and together with: (ii) the UCC-1 Financing Statement filed with the Florida Secured Transaction Registry under Docket Number 200500700433, assigned to Assignor by Assignment of Mortgage and Other Loan Documents, recorded in Official Records Book 46753 at Page 1275, of the Public Records of Broward County, Florida.

**TO HAVE AND TO HOLD** the same unto Assignee, its successors and assigns forever.

      **IN WITNESS WHEREOF**, Assignor has caused this Assignment of Mortgage and Other Loan Documents to be duly executed this 22ⁿᵈ day of December, 2010.

Signed, sealed and delivered
in the presence of:

Print Name: *Nancy Lynk-Alberts*

Print Name: DORIS FREUDMAN

**ASSIGNOR:**
Elaine Biss Irrevocable Trust

By: Micky Biss, Trustee


STATE OF FLORIDA       )

COUNTY OF MIAMI-DADE   )

      Execution of the foregoing instrument was acknowledged before me this 22ᵗʰ day of December, 2010, by Micky Biss, as Trustee of Elaine Biss Irrevocable Trust, on behalf of the trust. He is either personally known to me or has produced _____ as identification.

Notary Public, State of Florida

NANCY LYNK-ALBERTS
COMMISSION # DD 675618
EXPIRES: June 8, 2011
Bonded Thru Budget Notary Services


ALL APPLICABLE DOCUMENTARY STAMPS AND INTANGIBLE TAXES HAVE BEEN PAID AND PROPERLY AFFIXED TO THE NOTE AND MORTGAGE REFERENCED HEREIN WHICH HAVE BEEN ASSIGNED BY THIS INSTRUMENT.

# EXHIBIT "10"

<u>PROMISSORY NOTE</u>

U.S. $450,000.00

Hallandale Beach, Florida
July 24, 2007

1.    <u>Parties</u>.

1.1    I. Kushnir Hotels, Inc., a Florida corporation and Israel Kushnir, individually, (collectively, the "Borrower") all having an address of 3001 North Ocean Drive, Hollywood, FL 33019.

1.2    Doris Freudman ("Lender"), whose address is 1744 South Miami Avenue, Miami, Florida 33129.

2.    <u>Borrower's Promise to Pay</u>.  For value received, Borrower promises to pay to the order of Lender, its successors or assigns, without any off-set or deduction whatsoever, FOUR HUNDRED FIFTY THOUSAND and No/100 ($450,000.00) U.S. Dollars (the "Principal"), plus interest (the "Interest") from the date hereof at the rate of ten (10%) percent per annum.  In the event of default hereunder, from the date of default, Interest shall accrue at the highest rate permitted by applicable law.

3.    <u>Payments</u>.  Installments of Interest only totaling Three Thousand Seven Hundred Fifty ($3,750.00) shall be due and payable monthly commencing on August 24, 2007 and on the 24th day of each month thereafter until July 24, 2009, at which time the entire unpaid Principal balance and any unpaid Interest will be due and payable in full.

4.    <u>Application of Payments</u>.  So long as no default has occurred in this Note, all payments hereunder shall first be applied to Interest, then to Principal.  Upon default in this Note, all payments hereunder shall first be applied to costs pursuant to Section 8.3, then to Interest and the remainder to Principal.

5.    <u>Prepayment</u>.  This Note may be prepaid, in full and not in part, at any time, provided, however, that if, at the time of prepayment, the total amount of accrued and unpaid interest paid on the Note from inception of the Note through and including the date of prepayment (including any then due accrued and unpaid Interest) (the "Paid Interest"), is less than Forty-five Thousand Dollars ($45,000), then in addition to payment of the then due accrued and unpaid interest under the Note, the undersigned shall pay to Lender, as a prepayment penalty, the difference between Forty-five Thousand Dollars ($45,000) and Paid Interest.  Such prepayment penalty shall apply in any event of any prepayment including, without limitation, prepayment as a result of Lender's acceleration (as per Paragraph 8.2 below) and prepayment as a result of a judgment.

6.    <u>Other Instruments</u>.  The term "Loan Documents" as used herein shall mean all and any of the documents now or hereafter executed by Borrower, by others, or by Borrower and others, in favor of Lender, which wholly or partly secure or are executed in connection with this Note, including, but not limited to, the Real Estate Mortgage, Assignment of Rents and Security Agreement of even date herewith encumbering certain real and personal property located in Miami-Dade County, Florida.  Reference is made to the provisions of the Loan Documents for a description of the further rights of Lender.

7.    <u>Place of Payment</u>.  All payments hereunder shall be made at Lender's address set forth above or such other place as Lender may from time to time designate in writing.

8.    <u>Default</u>.

8.1    If any sum due Lender hereunder, or under any of the Loan Documents, is not paid within 10 days of when due, or if any other default occurs under any of the Loan Documents or if any obligation of Borrower under any of the Loan Documents is not fully performed, subject to any applicable grace period, then this Note shall be in default.

8.2    Upon default in this Note: (a) Lender, at its option, may declare the entire unpaid Principal balance of this Note, together with accrued interest, to be immediately due and payable without notice or demand, and (b) Lender shall be entitled to the benefit of any remedies available to it at law or in equity.

8.3    In addition to payments of Interest and Principal, if there is a default in this Note, Lender shall be entitled to recover from Borrower all of Lender's costs of collection, including Lender's attorneys' fees, paralegals' fees and legal assistants' fees (whether for services incurred in collection, litigation, bankruptcy proceedings, appeals or otherwise) and all other costs incurred in connection therewith.

9.    <u>Late Charges</u>.  A late charge of five percent (5%) of any payment required hereunder shall be imposed on each and every payment, including the final payment due hereunder, not received by Lender within five days after it is due.  The late charge is not a penalty, but liquidated damages to defray administrative and related expenses due to such late payment.  The late charge shall be immediately due and payable and shall be paid by Borrower to Lender without notice or demand.  Lender's acceptance of a late charge shall not constitute a waiver of any default then existing or thereafter arising in this Note.

10.    <u>Maximum Interest</u>.  It is the intent of the parties hereto that in no event shall the amount of Interest or payments in the nature of Interest payable hereunder exceed the maximum rate of interest allowed by applicable law, as

amended from time to time, and in the event any such payment is paid by Borrower or received by Lender, then such excess sum shall be credited as a payment of Principal, unless Borrower notifies Lender, in writing, that Borrower elects to have such excess sum returned to it forthwith.

11.    Unconditional Payment.  Borrower is and shall be obligated to pay Principal, Interest and any and all other amounts which become payable hereunder or under the other Loan Documents absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or set-off.

12.    Waivers.  Borrower and any endorsers, sureties, guarantors and all others who are, or may become liable for the payment hereof, severally:

12.1    waive presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note;

12.2    consent to all extensions of time, renewals, postponements of time of payment of this Note or other modifications hereof from time to time prior to or after the Maturity Date, whether by acceleration or in due course, without notice, consent or consideration to any of the foregoing;

12.3    agree to any substitution, exchange, addition, or release of any of the security for the indebtedness evidenced by this Note or the addition or release of any party or person primarily or secondarily liable hereon;

12.4    agree that Lender shall not be required first to institute any suit, or to exhaust its remedies against the undersigned or any other person or party to become liable hereunder or against the security in order to enforce the payment of this Note; and

12.5    agree that, notwithstanding the occurrence of any of the foregoing (except by the express written release by Lender of any such person), the undersigned shall be and remain, jointly and severally directly and primarily liable for all sums due under this Note.

13.    Submission to Jurisdiction.  Borrower, and any endorsers, sureties, guarantors and all others who are, or who may become, liable for the payment hereof severally, irrevocably and unconditionally:

13.1    agree that any suit, action, or other legal proceeding arising out of or relating to this Note may be brought, at the option of Lender, in a court of record of the State of Florida in Broward County, in the United States District Court for the Southern District of Florida, or in any other court of competent jurisdiction;

13.2    consent to the jurisdiction of each such court in any such suit, action or proceeding; and

13.3    waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any of such courts.

14.    Miscellaneous Provisions.

14.1    The term "Lender" as used herein shall mean any holder of this Note.

14.2    Time is of the essence in this Note.

14.3    The captions of sections of this Note are for convenient reference only and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Note.

14.4    This Note shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

14.5    If any provision of this Note is found by a court of competent jurisdiction to be unenforceable or null and void, such provision shall be deemed stricken and severed from this Note, and the remaining provisions shall continue in full force and effect.

14.6    This Note and the other Loan Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof and all prior agreements relative hereto and thereto which are not contained herein or therein are terminated.  This Note may not be amended, extended, renewed or modified nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by an authorized agent of Lender.  Any waiver of any provision hereof shall be effective only in the specific instance and for the specific purpose for which given.

15.    Waiver of Trial by Jury.  BORROWER AND LENDER (BY ACCEPTANCE OF THIS INSTRUMENT) HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS NOTE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS

NOTE OR ANY LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER ENTERING INTO THE SUBJECT LOAN TRANSACTION.

BORROWER:

I. Kushnir Hotels, Inc., a Florida corporation

By: _____
　　　Israel Kushnir, President

_____
Israel Kushnir, Individually

STATE OF FLORIDA　　　　　)
　　　　　　　　　　　　　　) SS:
COUNTY OF BROWARD　　　　)

　　　The foregoing instrument was acknowledged before me this ___ day of July, 2007 by Israel Kushnir, individually and as President of I. Kushnir Hotels, Inc.  He is personally known to me or who has produced _____ as identification.

_____
Notary Public, State of Florida
Print Name:_____
My Commission Expires:

MARK PERLMAN
MY COMMISSION # DD 628847
EXPIRES: November 8, 2010
Bonded Thru Budget Notary Service

# EXHIBIT "11"

MARK PERLMAN, P.A.
1820 E. Hallandale Beach Blvd.
Hallandale Beach, FL 33009

INSTR # 107294086
OR BK 44466 Pages 583 - 592
RECORDED 08/13/07 07:29:02
BROWARD COUNTY COMMISSION
DOC STMP-M: $1575.00
INT TAX: 11 $900.00
DEPUTY CLERK 3075
#1, 10 Pages

## REAL ESTATE MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY A

Date:           July 24, 2007

Borrower:       I. Kushnir Hotels, Inc., a Florida corporation and Israel Kushnir, individually, all having an address of
                3001 North Ocean Drive, Hollywood Beach, FL 33019.

Lender:         Doris Freudman having an address of 1744 South Miami Avenue, Miami, Florida 33129

Amount of initial indebtedness secured by this Mortgage:        $450,000.00

Maximum principal indebtedness, including future advances that may be secured by this Mortgage:  $900,000.00

This is a Real Estate Mortgage, Assignment of Rents and Security Agreement (the "Mortgage") to secure Borrower's performance and observance of all the terms, covenants, and conditions contained in a Promissory Note dated today in an amount equal to the initial indebtedness set forth above (the "Note") and in this Mortgage. For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower mortgages to Lender, its successors and assigns, all the following described property and any additional property acquired by Borrower in the future and subjected to the lien of this Mortgage as set forth below (collectively, the "Mortgaged Property"):

A.      Land. That certain parcel of real property located in Broward County, Florida and more particularly described as follows:

LOT 19, BLOCK 14, HOLLYWOOD BEACH, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 1, PAGE 27, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FL; LESS THE FOLLOWING DESCRIBED PARCEL:

        BEGINNING AT THE NW CORNER OF LOT 19, BLOCK 14, HOLLYWOOD BEACH, THEN EASTERLY ALONG THE NORTH PROPERTY LINE A DISTANCE OF 8.09 (8 9/100THS) FEET THEN SOUTHWARDLY TO A POINT OF THE SOUTH PROPERTY LINE 9.24 FEET (9 24/100THS) FEET EAST OF THE SOUTHWEST CORNER THEN WESTERLY ALONG THE SOUTH PROPERTY LINE 9.24 (9 24/100THS) FEET TO THE POINT OF BEGINNING, FOR STREET AND ROAD RIGHT OF WAY PURPOSES WITH REVERSION THEREOF TO THE GRANTORS AND THEIR HEIRS AND ASSIGNS IF EVER THE USE OF SAID PROPERTY FOR STREET AND RIGHT OF WAY PURPOSES SHALL EVER BE ABANDONED OR DISCONTINUED.

Address:        601 South Ocean Drive (360 Oregon Street), Hollywood, Florida

Folio Number:   1213-01-3180

B.      Improvements. All buildings, structures, and other improvements of any nature situated in whole or in part upon the Land now or at any time during the term of this Mortgage regardless of whether physically affixed now or hereafter severed or capable of severance from the Land (the "Improvements");

C.      Appurtenances. All easements, rights of way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, tenements, hereditaments and appurtenances, in any way belonging, relating, or pertaining to the Land now or at any time during the term of this Mortgage, together with all reversions, remainders, rents, issues and profits;

D.      Tangible Property. All Borrower's right, title and interest in and to all fixtures, machinery, equipment, tools, construction materials, and other tangible personal property attached to, situated on or about or in any way related to any present or future business operation or use of the Land or the Improvements now or at any time during the term of this Mortgage (the "Tangible Property");

E.      Rents. All rents, issues, incomes, security deposits and profits arising from the Land, the Improvements or the Tangible Property, whether existing now or at any time during the term of this Mortgage (the "Rents"); provided, however, that if Borrower is not in default under the Note or this Mortgage, Borrower may collect, and otherwise enjoy the benefit of all Rents;

F.      Contract Rights. All Borrower's right, title and interest in all contracts, franchise agreements, licenses, other agreements, equipment leases, and all warranties and guaranties related to the improvement, use, management, operation, sale, or other disposition (voluntary or involuntary) of the Land, the Improvements, the Tangible Property, or the Rents, including, without limitation, all deposits, prepaid items, and payments paid, due or to become due under any of the contracts as well as architectural plans and specifications and any other building plans, variances received or granted for the Land, city board or other city approval(s), building permits and development rights, affecting the Land and the Improvements and any other government approvals received relative to the Land (the "Contract Rights"); provided, however, that if Borrower is not in default under the Note or this Mortgage, Borrower may enjoy the benefit of all Contract Rights. Lender will not be bound to perform on Borrower's behalf under any contract subject to this section or

1

otherwise. In the event of a default in the Mortgage by Borrower, Borrower shall immediately deliver all Contract Rights to Lender;

G.   Proceeds. All proceeds of the conversion (voluntary or involuntary) of any of the Mortgaged Property into cash or other liquidated claims, and all proceeds that are payable to Borrower for injury or loss to, or the taking, conversion, requisitioning or destruction of, any of the Mortgaged Property, including all insurance and condemnation proceeds.

TO HAVE AND TO HOLD the Mortgaged Property subject, however, to the terms and conditions of this Mortgage.

PROVIDED, HOWEVER, that if Borrower performs all the terms, covenants, and conditions of the Note and this Mortgage than this Mortgage shall be void.

AND BORROWER represents to, warrants to, covenants with and agrees with Lender that:

ARTICLE ONE
COVENANTS AND WARRANTIES OF BORROWER

1.1   Performance of Note and Mortgage. Borrower will perform, observe and comply with all the provisions of the Note and this Mortgage, and will promptly pay to Lender all principal amounts together with all accrued interest and all other sums required to be paid by Borrower under the Note and this Mortgage, without deduction or credit for taxes or other similar charges paid by Borrower in connection with the Note or this Mortgage.

1.2   Warranty of Title. Borrower is well seized of an indefeasible estate in fee simple in the Land, has good and absolute title to all Tangible Property, Rents, Contract Rights and Intangible Property, and has full right, power and lawful authority to mortgage the Mortgaged Property to Lender. The Mortgaged Property is free and clear of all liens, charges and encumbrances, other than a certain Real Estate Mortgage, Assignment of Rents and Security Agreement and UCC-1 Financing Statement of even date herewith all in favor of USA Express, Inc., a Florida corporation (collectively the "Subordinate Mortgage"). Borrower represents and warrants that the Subordinate Mortgage is subordinate to the Mortgage. Borrower warrants and shall forever defend the title of the Mortgaged Property, as set forth above, against all claims. Until the Note is paid in full, Borrower shall maintain the title to the Mortgaged Property (including all additions or replacements) free and clear of all liens and encumbrances other than this Mortgage and the Subordinate Mortgage.

1.3   Subordinate Mortgage. Borrower shall pay all sums when and as due under the Subordinate Mortgage, abide by each and every of the stipulations, agreements, covenants and conditions contained in the Subordinate Mortgage, not accept any further advances under Subordinate Mortgage and not modify Subordinate Mortgage. If Borrower fails to make any payment required under Subordinate Mortgage as and when due or fails to perform any of the stipulations, agreements, conditions and covenants of Subordinate Mortgage, Lender may, on behalf of Borrower (without the obligation to do so and without releasing Borrower from any obligation hereunder) take any action Lender deems reasonably necessary to prevent or cure any such default including, without limitation, the payment of any sums due under Subordinate Mortgage.

1.4   Taxes, Liens and Utility Charges.

(a)   Borrower shall pay prior to December 31st of each year all ad valorem taxes and assessments and other similar charges assessed against the Mortgaged Property and shall furnish proof of such timely payment to Lender on or before January 15th of each year;

(b)   Borrower will promptly provide Lender with receipts evidencing the payment of any other charge which, if unpaid, would become a lien upon the Mortgaged Property;

(c)   Borrower shall promptly pay when due all hookup and periodic use charges for utilities (public or private);

(d)   Borrower will not permit any statutory or other liens to be created or remain outstanding against any of the Mortgaged Property.

1.5   Insurance. Until the indebtedness secured by this Mortgage is paid in full, Borrower will obtain and maintain for Lender's benefit, all insurance policies insuring the Mortgaged Property and Borrower against fire, windstorm, extended coverage and such other insurable hazards, casualties, liabilities and contingencies as Lender may require. The form of all required policies, the amounts of coverage, and the companies issuing the policies shall be reasonably acceptable to Lender.

All insurance policies obtained by Borrower concerning the Mortgaged Property shall contain a Florida standard mortgage clause making losses payable to Borrower and Lender jointly. Borrower shall not obtain insurance policies (other than those required by Lender) that are concurrent in form with the required policies or that contribute to the coverage afforded by the required policies without Lender's prior written consent. The insurance policies obtained by Borrower shall not be terminable or modified without 30 days' prior written notice to Lender, and shall be evidenced by original policies or certified copies of policies deposited with Lender, as Lender may elect.

2

At least 30 days before each insurance policy (required or optional) expires, Borrower shall deliver to Lender evidence satisfactory to Lender that the policy has been renewed and a receipt evidencing that the premium for the renewed policy has been paid. Borrower shall deliver to Lender the originals of all insurance policies concerning the Mortgaged Property or, at Lender's option, Borrower may deliver to Lender, original evidence of each insurance policy. As further security for the payment of the indebtedness secured by this Mortgage, Borrower assigns to Lender all Borrower's right to all unearned premiums under the policies.

Borrower directs each insurer to pay all insurance proceeds to Borrower and Lender, jointly. Borrower and Lender shall hold all proceeds of insurance Borrower receives in trust for the benefit of Lender in a segregated account not commingled with Borrower's other funds. So long as Borrower is not in default of this Mortgage or the Subordinate Mortgage or of any other loans owed by Borrower and/or no event exists that with the giving of notice or passage of time will become a default, Borrower shall have the option to either: a) apply the insurance proceeds to the reduction of the outstanding principal balance; or b) apply the insurance proceeds to the restoration of the Improvements.

If Borrower chooses to restore the Improvements, Lender shall make available to Borrower all or any portion of the insurance proceeds for application to the restoration of the Improvements upon such terms and conditions as Lender may reasonably impose to assure the quality of the restoration and the proper application of the insurance proceeds to the cost of restoration. Borrower's exercising its option to apply the insurance proceeds to reduce the indebtedness secured by this Mortgage shall not obligate Lender to release any portion of the Mortgaged Property from the lien and operation of this Mortgage. Borrower shall provide funds necessary to make up any shortfall in the insurance proceeds so as to fully restore the Improvements. Any excess of insurance proceeds after the complete restoration of the improvements shall be delivered to Borrower. In any event, Lender is not responsible to Borrower for any failure to collect insurance proceeds.

1.6      Condemnation. If all or any part of the Mortgaged Property is damaged or taken through condemnation, either temporarily or permanently, to further secure the payment of the indebtedness secured by this Mortgage, Borrower assigns to Lender all compensation, awards and other payments made to Borrower in connection with the taking. Borrower authorizes Lender, at its option but only in good faith, to commence, prosecute, and defend, in Lender's name or in Borrower's name, any proceeding relating to the taking and to settle or compromise any claim of Borrower in connection with the taking. Borrower assigns to Lender all Borrower's right to all compensation, awards, damages, claim, rights of action and proceeds of the taking. After deducting from the proceeds of condemnation received by Lender all Lender's expenses incurred in connection with the taking (including Lender's reasonable attorneys' fees), Lender shall apply the proceeds to the reduction of the indebtedness secured by this Mortgage. After payment of all sums due hereunder and under the Note, Lender shall pay any excess proceeds to Borrower. Borrower shall execute all additional instruments evidencing Borrower's assignment of all compensation, award, damages, claims, right of action and proceeds as Lender may require. Lender is not obligated to release any portion of the Mortgaged Property from the lien of this Mortgage because Lender chooses to apply the condemnation proceeds to reduce the indebtedness secured by this Mortgage.

1.7      Care of the Mortgaged Property. Borrower shall:

(a)      preserve and maintain the Mortgaged Property in good condition and repair, and Borrower shall not commit or suffer any waste of the Mortgaged Property;

(b)      permit Lender to inspect the Mortgaged Property at any time during normal business hours until the indebtedness secured by this Mortgage is paid in full;

(c)      promptly comply with all present and future restrictive covenants, conditions and governmental laws, ordinances, rules and regulations affecting the Mortgaged Property.

1.8      Further Assurances, After Acquired Property. Until the indebtedness secured by this Mortgage is paid in full, upon Lender's request, Borrower shall execute and deliver to Lender or cause to be executed and delivered to Lender, and where appropriate, cause to be recorded or filed in all places requested by Lender, all instruments of further assurance, including, without limitation, any further security agreements and financing statements as may, in Lender's opinion, be reasonably necessary or desirable to effectuate, perfect or preserve Borrower's obligations under the Note and this Mortgage.

1.9      Expenses. Borrower shall reimburse Lender for all costs and expenses, including reasonable attorneys' fees, incurred by Lender in connection with renewing, modifying, supplementing, enforcing or collecting the Note, this Mortgage, or enforcing or protecting Lender's interest in the Mortgaged Property, including, without limitation, the foreclosure of this Mortgage, prosecuting or defending any insurance claim or condemnation action to protect the security of this Mortgage. Lender's costs and expenses shall be included in the indebtedness secured by the lien of this Mortgage, and Borrower shall pay any amounts due Lender under this section on demand, together with interest at the default rate provided in the Note.

1.10     Lender's Performance of Defaults. If Borrower defaults in the performance of any term, covenant or condition of this Mortgage, Lender may perform the term, covenant or condition on Borrower's behalf, and all payments made or costs incurred by Lender in connection with performing on Borrower's behalf shall be a part of the indebtedness secured by this Mortgage and shall earn interest at the default rate provided in the Note. Lender may enter the Mortgaged Property at any time to cure Borrower's defaults on Borrower's behalf, without incurring liability of any nature to Borrower or any person authorized by Borrower to be in possession of the Mortgaged Property.

3