foreclosure) of the Mortgage, regardless of whether the presence or alleged presence of such Hazardous Material was caused by Borrower, a tenant or subtenant, a prior owner or its tenant or subtenant, or any third party. The foregoing provisions regarding environmental matters shall be cumulative of all other obligations of Borrower and all other rights and remedies of Lender under the Loan Documents, applicable law or otherwise, and the foregoing indemnities shall survive all events, including, but not limited to, payment of the indebtedness secured hereby, any foreclosure of the Mortgaged Property (or transfer in lieu thereof), any debtor relief proceeding, and the release or other termination of this Mortgage.

## ARTICLE TWO
## ASSIGNMENT OF RENTS

2.1        Assignment. Borrower does hereby absolutely and unconditionally assign and transfer to Lender all of Borrower's estate, right, title and interest in and to the Rents, to have and to hold the Rents unto Lender, its successors and assigns forever. From time to time, upon request of Lender, Borrower shall give further evidence of this assignment to Lender by executing and delivering to Lender specific assignments of the Leases and Rents, in form and content approved by Lender. All such specific assignments shall be of the same dignity and priority as this Mortgage. From time to time, upon request of Lender, Borrower shall also execute and deliver to Lender any notification to tenants or other document reasonably required by Lender.

2.2        Payment of Rents to Borrower, as Trustee, Until Default. So long as no Event of Default has occurred, Borrower may, as trustee for the use and benefit of Lender, collect, receive and accept the Rents as they become due and payable (but in no event for more than three months in advance); provided, however, that if the Rents exceed the payments due under the Note, Borrower may use such excess, first, for the operation and benefit of the Mortgaged Property and, second, for the general benefit of Borrower. Upon the occurrence of an Event of Default, Lender may, at its option, remove Borrower as trustee for the collection of the Rents and appoint any other person including, but not limited to, itself as a substitute trustee to collect, receive, accept and use all such Rents in payment of the obligations secured by this Mortgage, in such order as Lender shall elect in its sole and absolute discretion, whether or not Lender takes possession of the Mortgaged Property. Borrower hereby directs each of the respective tenants under any leases hereafter affecting the Mortgaged Property (the "Leases"), and any rental agent, to pay to Lender all such Rents, as may now be due or shall hereafter become due, upon demand for payment thereof by Lender without any obligation on the part of any such tenant or rental agent to determine whether or not an Event of Default has in fact occurred. Upon an Event of Default, the permission hereby given to Borrower to collect, receive and accept such Rents as trustee shall terminate and such permission shall not be reinstated upon a cure of the Event of Default without Lender's specific written consent. Further, upon the event of a Default, Borrower shall immediately turn over to Lender all Rents in the actual or constructive possession of Borrower, its affiliates, contractors, or its agents, together with an accounting thereof. Exercise of Lender's rights under this section, and the application of any such Rents to the obligations secured by this Mortgage, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto, but shall be cumulative and in addition to all other rights and remedies of Lender.

2.3        Performance Under Leases. Borrower covenants that it shall, at its sole cost and expense, (a) duly and punctually perform and discharge, or cause to be performed and discharged, all of the obligations and undertakings of Borrower or its agents under the Leases, (b) use its best efforts to enforce or secure, or cause to be enforced or secured, the performance of each and every obligation and undertaking of the respective tenants under the Leases, (c) promptly notify Lender if Borrower receives any notice from a tenant claiming that Borrower is in default under a Lease, and (d) appear in and defend any action or proceeding arising under or in any manner connected with the Leases.

2.4        Provisions of Leases and Approval of Tenants. All Leases shall be inferior and subordinate to the lien of this Mortgage and the terms of each Lease shall so expressly provide. Borrower covenants that all Leases hereafter entered into by Borrower shall be in form and substance approved by Lender. Further, Lender specifically reserves the right to approve all proposed tenants, and any assignee or sublessee of any existing tenant.

2.5        Notification of Lender's Rights. Lender shall have the right, but not the obligation, at any time and from time to time, to notify any tenant under any Lease of the rights of Lender as provided in this Article Two and Borrower, upon demand from Lender, shall confirm to such tenant the existence of such rights.

2.6        Other Assignments. Borrower shall not further assign or transfer the Leases or Rents except in favor of Lender as provided in this Article Two, and shall not create or permit to be created or to remain, any mortgage, pledge, lien, encumbrance, claim, or charge on the Leases or Rents. Any transaction prohibited under this section shall be null and void.

2.7        Section 697.07 of the Florida Statutes. The assignments of Leases and Rents contained in this Mortgage are intended to provide Lender with all the rights and remedies of mortgagees pursuant to Section 697.07 of the Florida Statutes (hereafter "Section 697.07"), as same may be amended from time to time. However, in no event shall this reference diminish, alter, impair, or affect any other rights and remedies of Lender, including but not limited to, the appointment of a receiver as provided herein, nor shall any provision in this Article Two, diminish, alter, impair or affect any rights or powers of the receiver in law or equity or as set forth in Section 3.4 herein. In addition, this assignment shall be fully operative without regard to the value of the Mortgaged Property or without regard to the adequacy of the Mortgaged Property to serve as security for the obligations owed by Borrower to Lender, and shall be in addition to any rights arising under Section 697.07. Further, except for the notices required hereunder, if any, Borrower waives any

5

notice of default or demand for turnover of Rents by Lender, together with any rights under Section 697.07 to apply to a court to deposit the Rents into the registry of the court or such other depository as the court may designate.

## ARTICLE THREE
## DEFAULTS AND REMEDIES

3.1        Event of Default. Borrower is in default if any of the following events occur:

(a)       Borrower fails to pay within 5 days of when due, any installments of interest or principal required by the Note;

(b)       Borrower fails to observe any other term, covenant or condition required of Borrower under the Note or this Mortgage within 10 days after notice from Lender or, if same is not reasonably capable of being observed within said 10 day period, if Borrower fails to commence to observe such other term, covenant or condition within said 10 day period and, thereafter, fails to diligently pursue observing same;

(c)       Borrower files a voluntary petition in bankruptcy for adjudication as a bankrupt or insolvent or Borrower files a petition or answer seeking or acquiescing to any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law or regulation relating to bankruptcy, insolvency or other relief for debtors;

(d)       Borrower seeks, consents or acquiesces to, or is unable to prevent the appointment of a trustee, receiver or liquidator for the Mortgaged Property, or Borrower makes a general assignment for the benefit of creditors or admits in writing that Borrower is unable to pay debts as they become due;

(e)       Borrower fails to discharge within 60 days any petition filed against Borrower seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law or regulation relating to bankruptcy, insolvency or other relief for debtors; or

(f)       Borrower fails to observe all the terms, covenants and conditions of any other obligation of Borrower to Lender, wherever and however incurred.

(g) the liquidation or termination of any corporate Borrower, the sale, exchange or transfer of substantially all of the assets of any Borrower or the death or disability of any individual Borrower.

(h) violation by any Borrower or its agents of any federal, state or local law, rule, regulation, ordinance, statute or code.

(i) any default occurs under Prior Mortgage B or under Prior Mortgage C.

3.2        Acceleration of Maturity. If Borrower is in default, Lender, at its option, may accelerate the maturity date for payment of the entire indebtedness evidenced by the Note, whereupon the Note shall be immediately due and payable, just as though the date of Lender's declaration of accelerated maturity was the originally specified, scheduled maturity date in the Note, and, at its option, Lender may declare all other sums secured by this Mortgage immediately due and payable.

3.3        Lender's Right to Enter and Take Possession, Operate and Apply Income.

If Borrower is in default, upon Lender's demand, Borrower shall surrender possession of the Mortgaged Property to Lender and, to the extent permitted by law, Lender may take possession of the Mortgaged Property and exclude Borrower from the Mortgaged Property.

If Borrower fails to surrender the Mortgaged Property to Lender, Lender may obtain a judgment requiring Borrower to deliver immediate possession of the Mortgaged Property to Lender, and Borrower specifically consents to the entry of that judgment. Upon Lender's demand, Borrower will pay Lender, all Lender's costs and expenses, including attorneys' fees, incurred in obtaining the judgment awarding Lender possession of the Mortgaged Property, and, until paid, all Lender's costs and expenses shall be added to the indebtedness secured by this Mortgage and shall earn interest at the Default Rate provided in the Note.

If Lender takes possession of the Mortgaged Property under this section, Lender may use, manage, and control the Mortgaged Property, and Lender may:

(a)       maintain the Mortgaged Property;

(b)       construct the Improvements upon the Mortgaged Property;

(c)       make all necessary repairs, renewals, replacements, additions, and improvements to the Mortgaged Property and purchase or otherwise acquire additional fixtures, equipment, machinery and other personal property required in connection with the operation of the Mortgaged Property;

(d)       have access to all the books, records and papers concerning the Mortgaged Property;

6

(e)       insure the Mortgaged Property;

(f)       manage and operate the Mortgaged Property and exercise all the rights and powers of Borrower (in Borrower's name or otherwise), with respect to the management and operation of the Mortgaged Property;

(g)       enter into all agreements reasonably required in connection with Lender's exercise of Lender's rights under this section.

If Lender takes possession of the Mortgaged Property under this section, Lender may collect all of the income, revenues, rents, issues and profits generated by the Mortgaged Property (whether past due or subsequently due) and, after deducting all Lender's costs and expenses incurred in taking possession of, managing, and operating the Mortgaged Property (including compensation for all persons employed by Lender for such purposes) the cost of all maintenance, repair, replacements, additions, improvements, purchases and acquisitions, the costs that Lender chooses to pay, of all insurance, all taxes, assessments and other charges against the Mortgaged Property, and other proper charges against the Mortgaged Property, Lender shall apply the remainder first to the payment of accrued interest and principal under the Note, then to any other indebtedness secured by this Mortgage.

When all amounts due under the Note are paid and all other defaults are cured, Lender shall surrender possession of the Mortgaged Property to Borrower; provided, however, that if Borrower subsequently defaults under this Mortgage, Lender shall have the right to retake possession of the Mortgaged Property as set forth in this section.

3.4       Receiver. If Borrower is in default, Lender may as a matter of strict right and without regard to the adequacy of the security, have a receiver appointed to take possession of the Mortgaged Property, collect the Rents, complete any construction of the Improvements, operate the Mortgaged Property, and apply all income from the Mortgaged Property as the court may direct. The receiver shall have all the rights and powers permitted under Florida law. The receiver's costs and expenses (including receiver's fees and attorneys' fees) incurred in connection with the protection and operation of the Mortgaged Property shall be included in the indebtedness secured by this Mortgage.

Lender's right to take possession, construct the Improvements, manage and operate the Mortgaged Property, whether by a receiver or otherwise, is in addition to any other right or remedy granted by this Mortgage or afforded by law and may be exercised along or in combination with Lender's other rights and remedies. If Lender takes possession of the Mortgaged Property under section 3.3 and 3.4 of the Mortgage, Lender must account to Borrower only for rents, issues and profits actually received by Lender. Notwithstanding the appointment of a receiver, Lender is entitled to the possession and control of any cash or other instruments, at that time held by Lender or payable or deliverable under the terms of this Mortgage to Lender.

3.5       Lender's Power of Enforcement. If Borrower is in default, Lender may file suit to enforce payment of the Note or Borrower's performance of any term, covenant or condition of this Mortgage, or to foreclose this Mortgage and sell the Mortgaged Property as an entirety or in separate parcels, and Lender may pursue any other remedy provided by law.

3.6       Principal and Interest Become Due on Foreclosure. If Lender commences a suit for foreclosure of this Mortgage, the entire indebtedness evidenced by the Note, if not previously declared due and payable, shall, at once, become due and payable.

3.7       Purchase by Lender. At any foreclosure sale, Lender may purchase the Mortgaged Property and, upon compliance with the terms of sale, Lender may hold and dispose of the Mortgaged Property without further accountability to Borrower.

3.8       Waiver of Appraisement, Valuation, Stay, Extension, Redemption Laws. Borrower agrees, to the full extent permitted by law, that if Borrower is in default, neither Borrower nor anyone claiming by, through, or under Borrower will take advantage of any appraisement, valuation, stay, extension or redemption laws to prevent or hinder the enforcement of this Mortgage or the absolute sale of the Mortgaged Property in foreclosure. Borrower, for itself and for all persons claiming by, through or under it, waives, to the full extent that it may lawfully do so, the benefit of all such laws.

3.9       Suits to Protect the Mortgaged Property. If Borrower is in default, Lender may institute all proceedings Lender considers expedient to protect the Mortgaged Property, to preserve or protect its interest in the Mortgaged Property or to avoid any potentially invalid governmental law, regulation, ordinance, rule or order that may impair the value of the security for the Note or prejudice Lender's interest in the Mortgaged Property. All costs or expenses (including reasonable attorneys' fees), incurred by Lender in connection with any proceeding shall be included in the indebtedness secured by this Mortgage, and Borrower shall promptly, upon Lender's demand, repay all costs and expenses to Lender, together with interest at the default rate provided in the Note.

3.10      Borrower to Pay the Note on any Default; Application of Proceeds by Lender. If Borrower defaults under this Mortgage, Lender may sue for the entire indebtedness evidenced by the Note remaining unpaid, together with Lender's costs and expenses, including reasonable compensation for Lender's agents and attorneys.

Lender may sue on the Note before, after or during the pendency of any proceedings for the enforcement of this Mortgage and Lender's right to recover on a judgment entered on the Note shall not be affected by Lender's possession of

7

the Mortgaged Property, by a foreclosure sale, or by Lender's exercise of any other right under this Mortgage or provided by law.

If all or any portion of the Mortgaged Property is sold after foreclosure and the proceeds of the sale are insufficient to pay the indebtedness secured by the Mortgaged Property, Lender may enforce payment of all amounts then remaining unpaid under the Note, and Lender may recover judgment for all amounts then remaining unpaid, together with interest at the Default Rate provided in the Note.

Borrower agrees, to the full extent that it may lawfully do so, that no levy of or execution upon any of the Mortgaged Property or upon any other property of Borrower shall, in any manner, affect Lender's lien on the Mortgaged Property or Lender's rights, powers or remedies under this Mortgage.

Lender shall apply all sums received by Lender under this section as follows:

(a)    first, to reimburse Lender's collection and enforcement costs and expenses, including reasonable compensation for Lender's agents and attorneys;

(b)    then, to pay the amounts due and unpaid under the Note;

(c)    finally, to payment of all other indebtedness due and owing from Borrower to Lender.

3.11    Delay or Omission - No Waiver.  Lender's delay or failure to exercise any right, power, or remedy under this Mortgage or provided by law, shall not impair Lender's future exercise of that right, power, or remedy or constitute Lender's waiver of or acquiescence to Borrower's default. Every right, power, and remedy given to Lender by this Mortgage may be exercised by Lender as often as Lender chooses.

3.12    No Waiver of One Default to Affect Another.  Lender's waiver of default shall not affect Lender's rights, powers and remedies as to any other then existing default or any subsequent default. If Lender (a) grants a forbearance or an extension of time for the payment of any sums secured by this Mortgage; (b) waives any right granted in the Note or this Mortgage or provided by law; (c) releases any part of the Mortgaged Property from the lien of this Mortgage; (d) changes any of the terms of the Note or this Mortgage; (e) consents to the filing of any map, plat or replat of the Land; (f) consents to any easement on the Land, or (g) makes or consents to any agreement subordinating the lien of this Mortgage, Lender's act or omission shall not release, modify or otherwise affect Borrower's liability under the Note, or this Mortgage, or the liability of any general partner of Borrower (if applicable) or of any co-signer, endorser, surety or guarantor; nor shall Lender's act or omission preclude Lender from exercising any right, power, or remedy granted by this Mortgage, nor, except as otherwise expressly consented to by Lender, shall Lender's act or omission alter the lien of this Mortgage. If all or any portion of the Mortgaged Property is sold or transferred (by operation of law or otherwise), Lender may deal with the transferee to the same extent as Lender might deal with Borrower without in any way releasing or discharging Borrower from its obligations under the Note and this Mortgage.

3.13    Discontinuance of Proceedings - Position of Parties Restored.  If any proceeding to enforce Lender's right or remedies under this Mortgage is discontinued or abandoned for any reason or is determined adversely to Lender, Borrower and Lender shall be restored to their former positions under this Mortgage and all Lender's rights, powers, and remedies shall continue as if no proceeding took place.

3.14    Remedies Cumulative.  Lender's right, powers and remedies under this Mortgage are not exclusive of any other right, power, or remedy provided by law.  Each of Lender's rights, powers and remedies are cumulative and in addition to all other rights, powers and remedies under this Mortgage or provided by law.

## ARTICLE FOUR
## ADDITIONAL COVENANTS

4.1    Mechanics' Liens.  Borrower shall, at Borrower's sole expense, pay when due or transfer to bond as permitted by Chapter 713 of the Florida Statutes, all claims of mechanics, materialmen, laborers and others which, if unpaid, could result in a lien on the Mortgaged Property.  Borrower shall not permit any mechanics', materialmen's, or laborers' statutory liens to be filed against the Mortgaged Property.

4.2    Security Interest.  This Mortgage constitutes a Security Agreement and a Financing Statement under the Florida Uniform Commercial Code.  Lender has all the right, powers and remedies (including notice of a secured party) provided to secured parties under the Florida Uniform Commercial Code in addition to Lender's right, powers and remedies under this Mortgage or otherwise provided by law.  On Lender's demand, Borrower shall promptly pay all costs and expenses of filing financing statements, continuation statements, partial releases, and termination statements Lender considers appropriate to establish and maintain the validity and priority of Lender's security interest in the Mortgaged Property.  Except for the purposes of replacement or repair, Borrower shall not remove any portion of the Mortgaged Property, or allow any portion of the Mortgaged Property to be removed from the Land without Lender's prior written consent.  Borrower acknowledges that 10 days' notice from Lender to Borrower shall be "reasonable" notice under any provision of the Florida Uniform Commercial Code requiring notice.  Upon Borrower's default, at Lender's request, Borrower shall assemble all portions of the Mortgaged Property not permanently affixed to the Land at a location specified by Borrower and reasonably convenient to Borrower.  Notwithstanding this section, Borrower agrees that Lender may, at its option, dispose of the Mortgaged Property in accordance with Lender's rights, powers, and remedies under this Mortgage, in lieu of proceeding under the Florida Uniform Commercial Code.

8

4.3      Further Liens. Borrower covenants that Borrower shall not further encumber the Mortgaged Property with any lien, security interest, or mortgage, nor shall Borrower request or allow a future advance or modification under Prior Mortgage B or under Prior Mortgage C without Lender's prior written consent, which may be withheld at Lender's sole discretion. Any further encumbrance, future advance or modification under any prior mortgages made without Lender's prior written consent will constitute a default under this Mortgage.

4.4      Transfer. Borrower shall not sell, convey, pledge, encumber or transfer, or permit to be sold, conveyed, pledged, encumbered or transferred, any interest in the Mortgaged Property or any part thereof. A contract for deed, or an assignment, pledge or encumbrance of a beneficial interest in any land trust, or a lease for substantially all of the Mortgaged Property shall constitute a transfer prohibited by the provisions of this section and shall be null and void. For purposes of this Mortgage, a sale, transfer, conveyance, pledge or encumbrance of any interest of any corporate Borrower shall be a violation of this Section 4.4 of this Mortgage.

4.5      Future Advances. In addition to all other indebtedness secured by this Mortgage, this Mortgage shall also secure and constitute a lien on the Mortgaged Property for all future advances made by Lender, in Lender's sole discretion, to Borrower for any purpose within 20 years after the date of this Mortgage, just as if the advances were made on the date of this Mortgage. The total amount of the indebtedness that may be secured by this Mortgage may increase or decrease from time to time, but the total unpaid principal balance secured at any one time by this Mortgage shall not exceed the amount set forth on the first page of this Mortgage, just as if the advances were made on the date of this Mortgage. The total amount of the indebtedness that may be secured by this Mortgage may increase or decrease from time to time, but the total unpaid principal balance secured at any one time by this Mortgage shall not exceed the amount set forth on the first page of this Mortgage, together with accrued interest and all Lender's costs, expenses, and disbursements made under this Mortgage.

4.6      Marshalling of Assets. To the extent permitted by law, Borrower, on its own behalf and on behalf of its successors and assigns, waives all right Borrower may have to require a marshalling of assets by Lender or to require Lender, upon foreclosure, to request the sale of any particular portion or portions of the Mortgaged Property in any particular order. Borrower agrees that Lender may request the sale of the Mortgaged Property as a whole parcel.

4.7      Tax on Mortgage or Indebtedness; Usury. If, at any time before the indebtedness secured by this Mortgage is paid in full, any governmental law, regulation, rules, ordinance or order: (a) makes Borrower's payment of the sums required to be paid by Borrower under this Mortgage unlawful, (b) makes Borrower's payment of all charges assessed upon the Note and upon the instruments given to secure the Note unlawful, (c) makes Borrower's payment of the indebtedness represented by the Note unlawful, (d) makes Borrower's covenants in the Note and this Mortgage concerning the payments set forth in (a) and (b) of this section unenforceable, Lender may, at Lender's option, declare the entire indebtedness secured by this Mortgage due and payable upon 30 days' written notice to Borrower.

4.8      Notice of Limitation of Future Advances. Borrower shall not file a Notice of Limitation on Future Advances in the public records of the county where the Mortgaged Property is located without Lender's prior written consent which may be withheld at Lender's sole discretion.

## ARTICLE FIVE
## MISCELLANEOUS PROVISIONS

5.1      Successors and Assigns Included in Parties. The terms "Lender" and "Borrower" in this Mortgage include their respective heirs, personal representatives and assigns. The terms of this Mortgage bind and are for the benefit of their respective heirs, personal representatives, successors and assigns. The term "Borrower" includes any future owner of the Mortgaged Property, and the term "Lender" includes any future owner of the Note and this Mortgage, but this provision does not constitute Lender's consent to any assignment of this Mortgage by Borrower or any transfer of the Mortgaged Property.

5.2      Addresses for Notice, Etc. Any notice, demand, approval or other instrument authorized by this Mortgage to be given to either party shall be in writing and addressed to Lender or Borrower, as the case may be, at the addresses set forth on page 1 of this Mortgage and shall be deemed delivered: (a) if sent by messenger, upon personal delivery to the party to whom the notice is directed, (b) if sent by overnight courier with request for next day delivery, the next business day after sending, or (c) whether actually received or not, two business days after receipt, refusal or if not claimed, when sent registered or certified, return receipt requested, postage prepaid.

5.3      Headings, Etc. The headings of the articles and sections of this Mortgage are for convenience and are not intended to limit or otherwise affect any of the terms contained in the articles or sections.

5.4      Invalid Provisions to Affect No Others. If one or more of the provisions in this Mortgage or in the Note are invalid, illegal or unenforceable that fact shall not affect the validity and enforceability of the remaining provisions in this Mortgage or the Note.

5.5      Modifications Must Be in Writing. This Mortgage may be modified, waived, discharged or terminated only by a written instrument signed by the party against which enforcement is sought. Any agreement made by Borrower and Lender relating to this Mortgage subsequent to the date of this Mortgage shall be superior to the right of the holder of any intervening interests in the Mortgaged Property.

9

5.6.        Governing Law.  This Mortgage is made by Mortgagor and accepted by Borrower with reference to the laws of the State of Florida and shall be construed, interpreted, enforced and governed by and in accordance with such laws.

5.7        Waiver of Trial by Jury.  LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE NOTE OR THIS MORTGAGE AND ANY AGREEMENT, DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION THEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THE LOAN EVIDENCED BY THE NOTE.

IN WITNESS WHEREOF, Borrower has executed and delivered this Mortgage on April 24, 2008.

Print Name: Marilyn R. Dixon

Print Name: MARK PERLMAN

I. KUSHNIR HOTELS, INC., a Florida corporation

By: _____
Israel Kushnir, President

Print Name: Marilyn R. Dixon

Print Name: MARK PERLMAN

_____
Israel Kushnir, Individually

STATE OF FLORIDA        )
                        ) SS:
COUNTY OF BROWARD        )

The foregoing instrument was acknowledged before me this 24 day of April, 2008 by Israel Kushnir, as President of I. Kushnir Hotels, Inc. and Israel Kushnir, individually. He is personally known to me or has produced _____ as identification.

MARK PERLMAN
MY COMMISSION # DD 605847
EXPIRES: November 8, 2010
Bonded Thru Budget Notary Services

_____
Notary Public, State of Florida
Print Name: MARK PERLMAN
My Commission Expires: 11/8/10

# EXHIBIT "15"

**PROMISSORY NOTE**

U.S. $700,000.00

Plantation, Florida
October 1, 2008

1.    Parties.

    1.1    Israel Kushnir, individually, having an address of 1044 N. North Lake Drive, Hollywood, FL 33019 and I. Kushnir Hotels, Inc., a Florida corporation, having an address of 3001 North Ocean Drive, Hollywood, FL 33019 (collectively "Borrower").

    1.2    USA EXPRESS, INC., a Florida corporation, whose address is 1744 South Miami Avenue, Miami, Florida 33129 ("Lender").

    2.    Borrower's Promise to Pay. For value received, Borrower promises to pay to the order of Lender, its successors or assigns, without any off-set or deduction whatsoever, SEVEN HUNDRED THOUSAND and No/100 ($700,000.00) U.S. Dollars (the "Principal"), plus interest (the "Interest") from the date hereof at the rate of ten percent (10 %) per annum. In the event of default hereunder, from the date of default, Interest shall accrue at the highest rate permitted by applicable law.

    3.    Payments. The entire Principal balance together with all accrued and unpaid Interest shall be due and payable in full on January 1, 2010.

    4.    Application of Payments. So long as no default has occurred in this Note, all payments hereunder shall first be applied to Interest, then to Principal. Upon default in this Note, all payments hereunder shall first be applied to costs pursuant to Section 8.3, then to Interest and the remainder to Principal.

    5.    Prepayment. Except as provided for in this Section No. 5, this Note may not be prepaid, in full or in part, at any time, unless at the time of prepayment the full amount of the Interest which would accrue during the fifteen (15) month term of this Note ($87,499.95) is paid in full. If the unpaid interest under this Note at the time of prepayment is less than $87,499.95, the undersigned shall pay to Lender the balance of the $87,499.95 as a prepayment penalty, at the time of prepayment. Such prepayment penalty shall apply in any event of prepayment, except for three (3) excluded events specified in this Section No. 5 (the "Excluded Events") including, without limitation, prepayment as a result of Lender's acceleration (as per Paragraph 8.2 below) and prepayment as a result of a judgment. The following are the three (3) Excluded Events which will allow for full or partial prepayments, as specified herein, without penalties on the amounts being prepaid: 1) If the property owned by Israel Kushnir located at 335 Monroe Street, Hollywood, FL. is sold, then providing sixty (60) days written notice is given by Borrower to Lender, this Note shall be prepayable in full, but not in part, at the time of said sale, without prepayment penalty and after said full payment is received by Lender, the Mortgage (defined in Section 6 of this Note) shall be cancelled and satisfied in its entirety. 2) If either one of the properties owned by I. Kushnir Hotels, Inc., located at 3001 North Ocean Drive, or 601 South Ocean Drive, Hollywood, FL. is sold, then providing sixty (60) days written notice is given by Borrower to Lender, One Hundred Thousand Dollars ($100,000) of this Note shall be prepayable at the time of said sale, without prepayment penalty and after said payment is received by Lender, said property will be released from the Mortgage. 3) If either one of the properties owned by I. Kushnir Hotels, Inc., located at 3001 North Ocean Drive, or 601 South Ocean Drive, Hollywood, FL. is sold, and then the second of these two properties is sold, then providing sixty (60) days written notice is given by Borrower to Lender, an additional Three Hundred Thousand Dollars ($300,000) of this Note shall be prepayable at the time of said sale, without prepayment penalty and after said payment is received by Lender, said second property will be released from the Mortgage.

    6.    Other Instruments. The term "Loan Documents" as used herein shall mean all and any of the documents now or hereafter executed by Borrower, by others, or by Borrower and others, in favor of Lender, which wholly or partly secure or are executed in connection with this Note, including, but not limited to, the Real Estate Mortgage, Assignment of Rents and Security Agreement of even date herewith encumbering certain real and personal property located in Broward County, Florida (the "Mortgage"). Reference is made to the provisions of the Loan Documents for a description of the further rights of Lender.

    7.    Place of Payment. All payments hereunder shall be made at Lender's address set forth above or such other place as Lender may from time to time designate in writing.

    8.    Default.

    8.1    If any sum due Lender hereunder, or under any of the Loan Documents, or under certain loans made to Israel Kushnir and I. Kushnir Hotels, Inc., jointly and severally, by either Micky Biss, Trustee of the Elaine Biss Revocable Trust or by Doris Freudman, or any other loan(s) made from Lender to Borrower (collectively "Other Loans") is not paid within 5 days of when due, or if any other default occurs under this loan or the Other Loans, or if any obligation of Borrower under any of the Loan Documents of this loan or under the Other Loans is not fully performed, subject to any applicable grace period, then this Note shall be in default.

1

8.2    Upon default in this Note: (a) Lender, at its option, may declare the entire unpaid Principal balance of this Note, together with accrued Interest, to be immediately due and payable without notice or demand, and (b) Lender shall be entitled to the benefit of any remedies available to it at law or in equity.

8.3    In addition to payments of Interest and Principal, if there is a default in this Note, Lender shall be entitled to recover from Borrower all of Lender's costs of collection, including Lender's attorneys' fees, paralegals' fees and legal assistants' fees (whether for services incurred in collection, litigation, bankruptcy proceedings, appeals or otherwise) and all other costs incurred in connection therewith.

9.    Late Charges. A late charge of five percent (5%) of any payment required hereunder shall be imposed on each and every payment, including the final payment due hereunder, not received by Lender within five days after it is due. The late charge is not a penalty, but liquidated damages to defray administrative and related expenses due to such late payment. The late charge shall be immediately due and payable and shall be paid by Borrower to Lender without notice or demand. Lender's acceptance of a late charge shall not constitute a waiver of any default then existing or thereafter arising in this Note.

10.    Maximum Interest. It is the intent of the parties hereto that in no event shall the amount of Interest or payments in the nature of Interest payable hereunder exceed the maximum rate of interest allowed by applicable law, as amended from time to time, and in the event any such payment is paid by Borrower or received by Lender, then such excess sum shall be credited as a payment of Principal, unless Borrower notifies Lender, in writing, that Borrower elects to have such excess sum returned to it forthwith.

11.    Unconditional Payment. Borrower is and shall be obligated to pay Principal, Interest and any and all other amounts which become payable hereunder or under the other Loan Documents absolutely and unconditionally and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or set-off.

12.    Waivers. Borrower and any endorsers, sureties, guarantors and all others who are, or may become liable for the payment hereof, severally:

12.1    waive presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note;

12.2    consent to all extensions of time, renewals, postponements of time of payment of this Note or other modifications hereof from time to time prior to or after the Maturity Date, whether by acceleration or in due course, without notice, consent or consideration to any of the foregoing;

12.3    agree to any substitution, exchange, addition, or release of any of the security for the indebtedness evidenced by this Note or the addition or release of any party or person primarily or secondarily liable hereon;

12.4    agree that Lender shall not be required first to institute any suit, or to exhaust its remedies against the undersigned or any other person or party to become liable hereunder or against the security in order to enforce the payment of this Note; and

12.5    agree that, notwithstanding the occurrence of any of the foregoing (except by the express written release by Lender of any such person), the undersigned shall be and remain, jointly and severally directly and primarily liable for all sums due under this Note.

13.    Submission to Jurisdiction. Borrower, and any endorsers, sureties, guarantors and all others who are, or who may become, liable for the payment hereof severally, irrevocably and unconditionally:

13.1    agree that any suit, action, or other legal proceeding arising out of or relating to this Note may be brought, at the option of Lender, in a court of record of the State of Florida in Broward County, in the United States District Court for the Southern District of Florida, or in any other court of competent jurisdiction;

13.2    consent to the jurisdiction of each such court in any such suit, action or proceeding; and

13.3    waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any of such courts.

14.    Miscellaneous Provisions.

14.1    The term "Lender" as used herein shall mean any holder of this Note.

14.2    Time is of the essence in this Note.

14.3    The captions of sections of this Note are for convenient reference only and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Note.

2

14.4        This Note shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

14.5        If any provision of this Note is found by a court of competent jurisdiction to be unenforceable or null and void, such provision shall be deemed stricken and severed from this Note, and the remaining provisions shall continue in full force and effect.

14.6     .     This Note and the other Loan Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof and all prior agreements relative hereto and thereto which are not contained herein or therein are terminated. This Note may not be amended, extended, renewed or modified nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by an authorized agent of Lender. Any waiver of any provision hereof shall be effective only in the specific instance and for the specific purpose for which given.

15.     Waiver of Trial by Jury.   BORROWER AND LENDER (BY ACCEPTANCE OF THIS INSTRUMENT) HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS NOTE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER ENTERING INTO THE SUBJECT LOAN TRANSACTION.

This document is hereby executed by the undersigned on October 1, 2008.

BORROWER:

Israel Kushnir, Individually

I. KUSHNIR HOTELS, INC., a Florida corporation

By: Israel Kushnir, President

3