UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:
**I. KUSHNIR HOTELS, INC.** **CASE NO.: 13-18034-RBR**

Debtor. **CHAPTER 11**
_______________________________/

**EMERGENCY MOTION TO AUTHORIZE CONTINUED USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363 AND BANKRUPTCY RULE 4001**

**EXPEDITED HEARING REQUESTED**

The Debtor-in-possession, I. Kushnir Hotels, Inc., obtained authority to use cash collateral through June 28, 2013. It anticipated a dismissal of the case on that date based on a settlement with the lenders. The lenders refused to acknowledge the settlement at hearing on June 28th and the Debtor seeks an expedited hearing pursuant to Local Rule 9075-1 to continue the use of cash collateral on a limited basis (utilities and salaries of non-owners) in order to maintain and operate the business of the Debtor until the case is dismissed or converted. The Adversary Proceeding in this case is set for hearing on July 9, 2013 at 9:30 and the Debtor respectfully requests this matter be set at the same time.

## I. Concise Statement of Relief Requested

The Debtor-in-Possession, I. Kushnir Hotels, Inc. (Kushnir Hotels) is seeking use of cash collateral. The Debtor-in-Possession is prepared to demonstrate at a preliminary hearing that it can provide adequate protection to its secured creditors while building reserves for the Estate and that over time it can maximize the value of the assets presently held by the Debtor, resulting in payment in full to the secured creditors and to all unsecured creditors. The secured creditors holding an interest in the cash collateral (Lenders) are listed in Section III.

The proposed use of the cash collateral is summarized on attached Exhibit "A." The Debtor contends: (a) that the majority of the Debtor's income comes from hotel room rentals that are not subject to the Assignment of Rents; (b) that there is a sufficient equity cushion in the Debtor's properties to provide adequate protection to the secured creditors until confirmation of a Plan of Reorganization, at which time it will begin to retire the debt over time; and (c) that pursuant to an oral agreement between the Debtor and the lenders that the mortgage loans are not in default.

## II. Introduction

1. Kushnir Hotels filed a Voluntary Chapter 11 Petition on April 9, 2013. No trustee has been appointed. The Debtor-in-possession does not believe that a creditors committee will be appointed.

2. The Debtor is a Florida corporation formed on July 27, 1999. Since that time the Debtor has operated various residential and hotel properties in Hollywood Beach, Florida ("the Properties").

3. The Debtor will be filing a proposed Chapter 11 Plan and Disclosure Statement which will provide for the payment over time of all secured and unsecured debt.

## III. Interest of Lenders in Debtor's Assets

4. Pursuant to 11 U.S.C. Section 363(c)(3) and Federal Rule of Bankruptcy Procedure 4001, the Debtor-in-Possession requests authorization for the interim use of cash collateral. The secured creditors which hold an interest in the Debtor's cash collateral in this matter and the estimated values of the subject properties are:

(a.) USA Express, Inc., a Florida corporation

(b.) Doris Freudman

(c.) Micky Biss as Trustee of the Elaine Biss Revocable Trust

The Properties which are the collateral for the subject loans are:

(a.) 340 Desoto Street, Hollywood, FL 33019
Appraised Value $2,460,000.00
Principal owed $1,300,000.00 ; and

335 Monroe Street, Hollywood, FL 33019
Appraised value $475,000.00 ; and
Vacant lot, Monroe Street, Hollywood, FL 33019
Appraised value $350,000.00
Principal owed (above two properties) $700,000.00

(b.) 601 South Ocean Drive, Hollywood, FL 33019
Appraised value $800,000.00
Principal owed $450,000.00

(c.) 3001 North Ocean Drive, Hollywood, FL 33019
Appraised value $1,685,600.00
Principal owed $750,000.00

(collectively "Lenders"). The Lenders are related parties.

5. The Debtor entered into an agreement with the Lenders in July, 2009, during the real estate recession to maintain and improve the Properties using the rents and income from the properties in order to sell the Properties for maximum value for the benefit of the Lenders. The Agreement was well documented by numerous communications between the parties and the parties complied with this agreement until April, 2012, when the Lenders declared a default and subsequently filed suit to foreclose on the mortgages. The default was declared only after Kushnir Hotels located suitable buyers for the Properties. The foreclosure suit, Case No. 12-12024(14) is presently pending in the Circuit Court of Broward County, Florida.

6. The subject mortgages are attached as Composite Exhibit "B."

## IV. Relief Requested

### A. Determination that F.S. 697.07 does not Apply to Hotel Revenues

7. Even if there was no bona fide dispute as to whether Defendants defaulted under the terms of the mortgage, Lenders are still not entitled to the benefits of F.S. 697.07 since three (3) of the four (4) mortgaged properties do not generate income from long term rent. Rather, the three properties are licensed hotel and transient rental properties.

8. In *Orlando Hyatt Assoc. v. FDIC*, 629 So.2d 975, 977 (Fla. 5th DCA, 1993) it was held that the F.S. 697.07 assignment of rents statute only applies to long term rent and does not apply to hotel revenues/profits.

9. Since Lenders required a cross-collateralization agreement among all four properties, the assignment of rent provisions are part of an overall agreement to collateralize all properties and the rent from an individual parcel cannot be separated out from the hotel rentals without voiding the cross-collateralization agreements.

10. Here, the Lenders are not entitled to an assignment of rents on three of the four parcels as a matter of law and an assignment of the rental income from the fourth property would impair the cross-collateralized mortgages agreed to by the parties.

11. Accordingly, Lenders are not entitled to an enforcement of the assignment of rents clause.

**B. There is a Sufficient Equity Cushion in the Properties to Provide Adequate Protection.**

12. The appraised value of the Properties totals $5,770,600.00. The principal balance due on the Properties totals $3,200,000.00. There is a sufficient equity cushion in the Properties to provide Lenders with adequate protection for a short period during which the Debtor intends to market and sell the Properties as a going concern.

**C. The Mortgages are not in Default**.

13. Defendant's deny that they have defaulted under the terms of the note and mortgage sued upon as a result of an oral modification of the terms of the mortgage which was acted on for a period of thirty-four (34) months.

14. Specifically, during the period of July 24, 2009 through October 7, 2009, the parties came to an oral agreement whereby Lenders agreed to defer payment of principal, interest and real estate taxes until such time as the Debtor could sell the real estate, conditioned on Lenders' approval, to obtain sufficient sums to pay Lenders their outstanding principal and interest. Lenders agreed to hold a mortgage for a buyer who was willing to make a substantial down payment. It was further agreed that the Debtor would pay insurance and operate the properties in question, including receipt and retention of rental income, operation of the hotels, obtaining fees from the hotel guests, and maintaining and repairing the properties.

15. The parties acted on this agreement for almost three (3) years, in that the Debtor did not made payments to Lenders since July 24, 2009 when the loans were due and Lenders did not declare a default under the Mortgage and Assignment of Rents until April 17, 2012.

16. It has been repeatedly held that written contracts can be modified by subsequent oral agreements of the parties, even though the written contract purports to prohibit such modifications. *W.W. Contracting Inc. v.Harrison*., 779 So.2d 528 (Fla. 2 DCA, 2000); *Fid. And Deposit Co. of Md. V. Tom Murphy Constr. Co*., 674 F.2d 880, 884 (11th Cir. 1982); *Pam Am Eng'g Co., Inc. v. Ponchos's Construction, Co*., 387 So.2d 1052, 1053 (Fla. 5th DCA, 1980); *King Partitions & Drywall, Inc. v. Donner Enterprises, Inc*., 464 So.2d 715, 716 (Fla. 4th DCA, 1985); *Prof'l Inc. Corp. v. Cahill*, 90 So.2d 916, 918 (Fla. 1956)

17. F.S. 697.07(3) provides that ". . . the assignment of rents shall be enforceable upon the mortgagor's default . . .".

18. F.S. 697.07(4) provides that the Court may Order the Court Registry deposits of rent in a foreclosure action.

19. However, the Court should deny an assignment of rents where there is a bona fide dispute between the parties as to whether the mortgagor is in default. *Whud Real Estate Limited Partnership v. Oak Grove Ltd*., 699 So.2d 842 (Fla. 3 DCA, 1997)

20. Here, there is a bona fide dispute as to whether the mortgage is in default where the Lenders modified the terms of the mortgage and the modification was acted upon by the parties for a period of almost three (3) years.

21. The Debtor will not be able to operate or reorganize and would be forced to convert to a Chapter 7 or to dismiss if not authorized to use cash collateral. The Debtor would be unable to pay its employees and provide the services necessary to maintain the properties and retain the tenants without the use of cash collateral. A loss of tenants would greatly devalue the Properties.

22. The Debtor has not been able to work out a consensual agreement with the Lenders.

23. The Debtor believes in good faith that if it is permitted to use the cash collateral and to continue to operate the Properties and to collect hotel fees that the Debtor can reorganize and pay its secured creditors in full with a substantial distribution to unsecured creditors.

24. By contrast, a forced liquidation of the Debtor's Property would not be sufficient to pay the secured creditors in full and would provide no distribution to unsecured creditors.

25. The use of cash collateral is prohibited absent the creditors' consent or the Debtor's proposal of adequate protection to the creditor for use of said cash collateral. In Re: Seville Entertainment Complex of Pensacola, Inc., 73 B.R. 215(Bankr. N.D. Fla. 1986).

26. The Debtor has been unable to reach an accord with its secured lender and requests the court authorize the use of cash collateral.

## V. Proposed Use of Cash Collateral

27. Attached as Exhibit "A" is Debtor's Cash Flow Projection detailing the proposed receipt and use of cash collateral. The Debtor holds a good faith belief that it can, with the court's approval, collect hotel fees from its tenants in the approximate amounts set forth in the Projection. This will permit the continued operation of the Properties until sale of the Properties and confirmation of a Plan.

28. The intention of adequate protection payments is to protect and prevent a diminution of a creditor's collateral. In Re: SunCruz Casinos, LLC, JAB America, Inc., 298 B.R. 821 (Bankr. S.D. Fla. 2003). The use of cash collateral will permit the Debtor to maintain the Properties thereby maintaining the value of the collateral.

## VI. Compliance With Court Guidelines

29. The Debtor-in-possession believes in good faith that it has complied with Bankruptcy Rule 4001(b), with Local Rule 4001-2 and with this Court's Guidelines for Motions Seeking Authority to Use Cash Collateral.

## VII. Conclusion

30. The Debtor-in-Possession is prepared to demonstrate at a preliminary hearing that it can provide adequate protection to its secured creditors while building reserves for the Estate and that over time it can maximize the values of the assets presently held by the Debtor, resulting in payment in full to the secured creditors and all unsecured creditors. The alternative is a fire sale of the Debtor's assets with no distribution to unsecured creditors. The Debtor-in-Possession believes in good faith that the proposed use of cash collateral is in the best interest of all creditors

and the Estate.

WHEREFORE, I. Kushnir Hotels, Inc., respectfully request the Court authorize the use of cash collateral as set forth above, set this matter for final hearing, direct the Debtor's tenants to make all future payments to the Debtor until further order of this Court and grant such other and further relief as the Court deems just and property.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document was filed electronically and served electronically to: U.S. Trustee and all interested parties on this 2nd day of July, 2013.

DAVID W. LANGLEY
Attorney for Debtor-in-possession
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone: 954-356-0450
Facsimile: 954-356-0451
E-mail: dave@flalawyer.com
By: ___/s/_*David W. Langley*________
David W. Langley, Esq.
Florida Bar Number 348279